## LEASE

This Lease, made this 21st day of __March__, 2014 by and between **Milbank Insurance Company**, an Iowa corporation (hereafter referred to as "Lessor") and **Wapiti Medical Group Limited Company**, a South Dakota corporation, whose principal office is at 603 South Dakota Street, Milbank, South Dakota 57252 (hereafter referred to as "Lessee").

WHEREAS, Lessor owns property located at 107 Flynn Drive, Milbank, South Dakota (hereafter referred to as the "premises" or the "Milbank Building"); and

WHEREAS, Lessor desires to lease a certain portion of the premises, to wit: a portion of the sixth floor in the Milbank Building and Lessee desires to lease the same from Lessor.

NOW THEREFORE, in consideration of the mutual covenants set forth herein and, intending to be legally bound hereby, Lessor and Lessee hereby agree as follows:

### ARTICLE I - DEMISED PREMISES

Lessor hereby agrees to lease to Lessee and Lessee hereby agrees to lease from Lessor approximately 3,000 square feet, more particularly described on Exhibit A attached hereto, on the sixth floor of the premises (said 3,000 square feet is referred to as the "demised premises").

Lessor represents and Lessee acknowledges that the demised premises is leased "as is" and "where is" with no representations or warranties except as specifically stated herein.

### ARTICLE II - TERM

The term of this Lease shall be twelve (12) months commencing on the 1st day of April, 2014 and ending on the 31st day of March, 2015.

### ARTICLE III – RENT

In consideration for the space leased to Lessee hereunder Lessee agrees to pay Lessor as rent for the demised premises $36,000.00 payable at the monthly rate of $3,000.00.

Rent shall be paid in monthly installments in advance on the first day of each and every month during the term of the Lease to the Lessor at the address indicated above or to such other person and/or location which Lessor may specify from time to time in writing. Rent payments shall be considered timely paid if received by the Lessor within ten (10) days after the due date. A late charge of 5% of the monthly rent shall be assessed for any rent payment not timely paid.

In the event that the Lessee shall remain in the demised premises after the expiration of this lease without having given Lessor notice in writing of the Lessee's intention to renew, such holding over shall be construed as a tenancy from month to month, subject to the payment of monthly

rent in advance at the rate determined by Lessor, in its sole discretion, from time to time during such period of hold over.

## ARTICLE IV - USE OF DEMISED PREMISES

Lessee agrees that the demised premises will be used for general office purposes by Lessee and its employees, and for no other purposes without the written consent of the Lessor. Lessee agrees that its use of the demised premises will not violate the laws, ordinances rules or regulations of the city, county and state in which the demised premises is located and that it shall not do, or permit anything to be done in or on the demised premises, or bring or keep anything therein which will, in any way, obstruct, injure, annoy or interfere with the rights of Lessor or other tenants, or subject Lessor to any liability for injury to persons or damage to property, or interfere with the good order of the premises. Lessee further agrees to comply and to cause its employees, officers, agents and customers to comply with the Lessor's reasonable rules and regulations applicable to Lessee's use of the premises and the demised premises, as amended from time to time and attached as Exhibit B and incorporated herein.

## ARTICLE V - POSSESSION

Lessor agrees to give Lessee possession of the entire demised premises in good repair and condition not later than noon on the first day of this Lease term. Postponement of Lessee's occupancy at the beginning of the term of this Lease shall not extend the term beyond the Lease expiration date set forth in this Lease.

## ARTICLE VI - UTILITIES AND INSURANCE

Subject to causes of service interruption which are out of Lessor's control, Lessor agrees to supply ~~janitorial services~~, heat, electricity, air conditioning, water, and snow removal service with respect to the demised premises. Lessor agrees that the system of heating, air conditioning, and ventilating shall provide reasonably adequate year round comfortable conditions in all occupied areas of the demised premises.

Lessee, at its expense, shall obtain and maintain in effect as long as this Lease remains in effect and during such other time as Lessee occupies the premises or any part thereof, insurance policies providing at least the following coverage:

> 1. commercial general liability insurance written on an occurrence basis with respect to the demised premises and the business operated by Lessee to afford insurance including, but not limited to, contractual liability coverage against assumed or contractual liability under this Lease, specifically including the liability of Lessee arising out of the indemnities provided in Article X, to provide insurance against bodily injury including loss of life, personal injury, and property damage, with minimum combined single limits of one million dollars ($1,000,000) per occurrence and in the aggregate;
>
> 2. "all-risk" property insurance policy written at replacement cost value and with replacement cost endorsement, covering all of Lessee's personal property in the premises

2

and Lessee's interest in all alterations and leasehold improvements and all betterments installed in the premises by or on behalf of Lessee;

3. if and to the extent required by law, worker's compensation or similar insurance in form and amounts required by law; and

4. any other insurance reasonably required of Lessee by Lessor or any mortgagee of Lessor.

The company or companies writing any insurance which Lessee is required to carry and maintain pursuant to this Article, as well as the form of such insurance, shall at all times be subject to Lessor's approval and any such company or companies shall have a rating of at least B+ or better and a financial size rating of X or larger from *Best's Key Rating Guide and Supplemental Service, Property/Casualty* (or comparable rating from a comparable insurance rating service), and shall be licensed to do business in the State of South Dakota. Commercial liability insurance policies required under this Article shall include Lessor as additional insured, shall be primary and non-contributory, and shall also contain a provision by which the insurer agrees that such policy shall not be canceled, materially changed or not renewed without at least thirty (30) days advance notice to Lessor. Lessee shall provide Lessor with Certificates of Insurance for such policies prior to or coincident with the commencement of this Lease. Notwithstanding anything set forth above to the contrary, all dollar limits specified shall be increased from time to time as reasonably necessary to effect economically equivalent insurance coverage, or coverage deemed adequate in light of then-existing circumstances.

If Lessee fails to obtain insurance as required under this Article then Lessor may, but shall not be obligated to, obtain such insurance, and in such event, Lessee agrees to pay, as additional rent, the premium for such insurance upon demand by Lessor.

Lessee shall not do anything in or about the premises which will in any way tend to increase the fire or liability insurance rates on said premises. Lessee shall pay as additional rent any increase in premiums for insurance which may be charged to Lessor during the term of this Lease on the amount of insurance carried by Lessor on the premises, resulting from activities carried on or occupancy of the demised premises by Lessee, whether or not Lessor had consented to the same.

## ARTICLE VII – COVENANT OF QUITE ENJOYMENT

Lessor covenants and warrants that Lessor has full power to lease the demised premises. Lessor agrees to defend Lessee's use and occupancy against all persons claiming by, through or under Lessor.

## ARTICLE VIII – REPAIR OF PREMISES

Lessee shall take good care of the demised premises so that at the end of this Lease the demised premises shall be in the same or similar condition as it was at the time Lessee took possession, reasonable wear and tear excepted. Lessee shall at its own cost and expense make all repairs and replacements to the demised premises and perform all maintenance to the demised premises. All

such repairs and replacements shall be made in a good and workmanlike manner. Lessee shall obtain prior written consent of Lessor prior to making any such repairs or replacements. If Lessor elects to make any necessary repairs or replacements or if Lessee fails to make any necessary repairs or replacements promptly and Lessor must make the repairs or replacements, Lessee shall, on request of Lessor, pay the cost thereof to Lessor.

Lessor shall maintain the building containing the demised premises and the mechanical systems servicing the building and the parking lots, lighting and landscaping around the building.

## ARTICLE IX - ALTERATIONS

Lessee may not during the term of this Lease make changes or improvements to the demised premises unless the Lessor consents in writing to the changes or improvements, before any work is commenced. Any additions, alterations, improvements, temporary or permanent, except moveable furniture and equipment belonging to Lessee, in or upon the demised premises, whether installed by Lessor or Lessee, shall become Lessor's property and remain with the demised premises on the termination of this Lease.

## ARTICLE X - INDEMNIFCATION; WAIVER OF SUBROGATION

Lessor and Lessee hereby agree to indemnify and hold each other harmless from and against any and all claims, actions, damages, liabilities and expenses (including attorney's fees and other professional fees) in connection with bodily injury including loss of life, personal injury and /or damage to property, one to the other or third parties, arising out of the negligence of either, or either's officers employees, agents or contractors, however, in the event of damage to the property of either which is covered by a property insurance policy maintained by Lessor covering its property or by Lessee covering its property, then Lessor and Lessee hereby agree to waive all subrogation rights against each other, in advance of any such loss, but only if this does not invalidate any coverage otherwise applicable to the loss. Lessee further agrees, to the maximum extent permitted by law, to indemnify and hold Lessor harmless from and against any and all claims, actions, damages, liabilities and expenses (including attorney's fees and other professional fees), judgments, settlements payments, and fines paid, incurred or suffered by Lessor in connection with damage to property or the environment and arising, directly or indirectly, wholly or in part, from any conduct, activity, act, omission, or operation involving the use, handling, generation, treatment, storage, disposal, other management or release of any hazardous substance in, from or to the premises, whether or not Lessee may have acted negligently with respect to such hazardous substance.

## ARTICLE XI - FIRE OR OTHER CASUALTY

If during the term of this lease or any renewal thereof, the premises be so damaged by fire or other casualty as to render the demised premises untenantable and the repair of such damage shall not be commenced by the Lessor within thirty (30) days thereafter and completed within sixty (60) days thereafter, it shall be optional with either party hereto, by written notice to the other given not later than forty (40) days after said fire or other casualty, to terminate this Lease as of the date of such damage, and in case of such termination the rent shall be paid only to the

4

date of such fire or other casualty and this Lease shall be canceled as of that date. Upon partial destruction of the premises, which does not render the demised premises untenantable, Lessor shall make and complete repairs in full as soon as practicable during which period the rent shall be abated to the extent of the loss of the use of the demised premises.

## ARTICLE XII - CONDEMNATION

If the premises, or such portion thereof as will make the demised premises unusable for the purposes herein leased, as upon by the Lessor and Lessee, be condemned by any legally constituted authority for any public use or purpose, then the term hereby granted shall cease from the time when possession thereof is taken by public authorities, and rent shall be accounted for as between the Lessor and the Lessee as of that date. Such termination, however, shall be without prejudice to the rights of either the Lessor or the Lessee to recover compensation and damage from the condemner caused by condemnation. It is further understood and agreed that neither the Lessee nor the Lessor shall have any rights in any award made to the other by any condemnation authority

## ARTICLE XIII - INSPECTIONS

Lessee agrees that the Lessor or Lessor's agents or representatives, shall at all reasonable times have free access to the demised premises for the purpose of examining and inspecting the condition of the same, or for making repairs to the premises or exercising any right or power reserved to Lessor under the terms of this Lease.

## ARTICLE XIV - DEFAULT

If default shall be made by the Lessee in the performance of the conditions of this Lease, and such default shall have continued for thirty (30) days after written notice thereof has been furnished to Lessee, then Lessor, in addition to all other remedies now or hereafter afforded or provided by law, may, at its election: (a) terminate this Lease and forthwith repossess the demised premises, using such force as may be necessary to evict Lessee, or Lessor may proceed to recover possession pursuant to the applicable law. If Lessor does elect to terminate this Lease, Lessor shall be entitled to recover, in addition to all remedies under law, the damages equal to the total of (I) the cost of recovering the demised premises, (ii) the unpaid rent earned at the time of termination, (iii) the balance of the rent for the remainder of the term less the fair market rental value of the demised premises for said period, and (iv) any other sum of money and damages owed by Lessee to Lessor; (b) terminate Lessee's right of possession (but not this Lease) and may repossess the demised premises by forcible entry or detainer suit or otherwise, without demand or notice of any kind to Lessee and without terminating this Lease, in which event Lessor may, but shall be under no obligation to do so, relet the same for the account of Lessee for such rent and upon such terms as shall be satisfactory to Lessor. If Lessor shall fail or refuse to relet the demised premises, or if the same are relet and a sum sufficient to satisfy all rent provided for in this Lease to be paid by Lessee shall not be realized from such reletting after paying all sums due hereunder earned, but unpaid at the time of reletting (plus the cost of recovering possession and all costs of repairing and preparing the demised premises for reletting), then Lessee shall pay to Lessor as damages, in addition to such other items, a sum

equal to the amount of the rental for such period or periods, or if the demised premises have been relet, Lessee shall satisfy and pay any such deficiency upon demand therefore from time to time. Notwithstanding any such reletting without termination, Lessor may at any time thereafter elect to terminate this Lease for such previous breach.

## ARTICLE XV - SURRENDER OF DEMISED PREMISES

Lessee agrees to surrender the demised premises at the end of the term of this Lease or any renewal thereof in as good order and condition as the same now are or may be put by Lessor, reasonable use and natural wear and tear, damage by fire, the elements or other casualty excepted. If Lessee continues possession of the demised premises after the expiration or termination of the terms of this Lease or any renewals thereof, such tenancy shall be from month to month in the absence of a written agreement to the contrary.

## ARTICLE XVI – SUCCESSORS AND ASSIGNS

This Lease shall be binding upon and inure to the benefit of the respective heirs, administrators, executors, successors and assigns of the parties hereto. However, Lessee may not assign the Lease or sublet the demised premises, without the written consent of the Lessor, which shall not be unreasonably withheld.

## ARTICLE XVII – ENTIRE AGREEMENT

This Lease represents the entire understanding between the parties concerning the demised premises. No course of prior dealing between the parties or their agents shall be relevant or admissible to supplement, explain, or vary any of the terms of this Lease. Acceptance of, or acquiescence to, a course of performance rendered under this Lease or any prior agreement between the parties or their agents shall not be relevant or admissible to determine the meaning of any of the terms or covenants of this Lease. Other than as specifically set forth in this Lease, no representations, understandings or agreements have been made or relied upon in the making of this Lease. If any of the provisions of this Lease are declared to be invalid, such provision shall be severed from this Lease and the other provisions hereof shall remain in full force and effect. This Lease can only be modified by a writing signed by each of the parties hereto.

## ARTICLE XVIII - NOTICE

Any notice given or required to be given under the Lease shall be in writing and shall be deemed to have been given when sent by recognized overnight courier or mailed by United States Registered or Certified Mail, postage prepaid, to the other party at the address stated below or at another address of which the other party has been notified as provided herein.

To the Lessor:

Milbank Insurance Company
107 Flynn Drive
Milbank, SD 57253

With copy to:
State Automobile Mutual Insurance Company
518 East Broad Street
Columbus, Ohio 43215-3976
Attention: Arthur Hersey

Notice to the Lessee shall be given to the Lessee at the demised premises.

## ARTICLE XIX – ADDITIONAL PROVISIONS

1. Lessor agrees that Lessee shall have the right of first refusal to lease any available adjacent space on the sixth floor ("Available Space") under the following terms and conditions:

    (a) In the event that Lessee desires to lease all or part of the Available Space, Lessee will give written notice to Lessor which notice shall include the location of and number of square feet of Available Space and the term that Lessee desires. If such terms are acceptable to Lessor, Lessor and Lessee shall execute an amendment to this Lease reflecting such terms.

    (b) In the event that Lessor receives a bona fide offer to lease all or part of the Available Space from a third party, Lessor shall give Lessee written notice of the location of and number of square feet of Available Space and the term and any other significant conditions of said offer to lease and Lessee shall have five (5) business days from the date of receipt of said written notice to give written notice to Lessor that Lessee shall match the terms and conditions of said offer to lease and Lessor and Lessee shall execute an amendment to this Lease under substantially the terms and conditions of the offer to lease within seven (7) business days after the previously stated five (5) business days. Lessee's failure to give written notice within said five (5) days or Lessee's failure to execute the said amendment to Lease within said seven (7) days shall give Lessor the right to execute a lease with a third party according to the terms of the bona fide offer to lease.

2. Lessee may use any furniture currently located in the demised premises, including cubicles, however, said furniture and cubicles shall at all times remain the property of Lessor.

3. Provided that Lessor receives Lessee's signature on this Lease on or before 4:00 p.m., Friday, March 7, 2014 (scanned and e-mailed signature is acceptable), then, prior to April 1, 2014, Lessor shall repair the walls with peeling wallpaper by either removing the wallpaper and painting the walls or by repairing the wallpaper. Further, Lessor shall repair all holes in any walls and repaint as necessary to cover the repairs and ceiling tiles will be replaced as necessary. In the event that Lessor does not receive Lessee's signature by the time stated above, Lessor and Lessee shall cooperate to coordinate the

completion of the stated work as soon as possible after April 1, 2014 (for example, doing work in the evenings or on weekends) without changing the April 1, 2014 commencement date of this Lease.

## ARTICLE XX – GOVERNING LAW

This Lease shall be interpreted under the laws of the State of South Dakota.

The parties, by the signatures of their duly authorized officers hereon, agree to and accept the foregoing.

**Lessor:**

Milbank Insurance Company

By: *Steven E English*
Printed Name: Steven E English
Title: SVP, CFO

**Lessee:**

Wapiti Medical Group Limited Company

By: *[signature]*
Printed Name: Troy Kaslap
Title: President

STATE OF Ohio
COUNTY OF Franklin, ss:

BE IT REMEMBERED, that before me, the subscriber, a notary public in and for said County and State, personally came *Steve English*, *SVP, CFO* of Milbank Insurance Company, who acknowledged the signing of the foregoing instrument and that the same is his/her voluntary act and deed.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my official seal on this 21 day of March, 2014.

*[signature]*
Notary Public

Kimberly A. Allmon
Notary Public, State of Ohio
My Commission Expires 09-22-2017

8

STATE OF South Dakota
COUNTY OF Grant , ss:

BE IT REMEMBERED, that before me, the subscriber, a notary public in and for said County and State, personally came Troy Kastrup, President of Wapiti Medical Group Limited Company, who acknowledged the signing of the foregoing instrument and that the same is his/her voluntary act and deed.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my official seal on this 6th day of March, 2014.

Carol Halverson
Notary Public

CAROL HALVERSON
NOTARY PUBLIC
SOUTH DAKOTA

My commission Expires 03/18/2018

COPY

State Auto - Milbank - South Dakota Lease - 3-5-14 (2) (CLEAN)

# EXHIBIT A
## DEPICTION OF DEMISED PREMISES



## EXHIBIT B
## RULES AND REGULATIONS

1. Lessee's employees, officers, agents and customers shall not be permitted to smoke inside the Milbank building. Any such person desiring to smoke is permitted to do so only in areas outside the Milbank Building designated by the Lessor.

2. Lessee's employees and officers shall have access to the Milbank Building's cafeteria's eating areas (but no access to the food preparation areas) during its business hours.

4. Lessee's employees shall use security cards to access the building premises and Lessee shall instruct its employees that security cards are not to be used by any other person other than the employee to which it is assigned. The first 10 security cards will be provided free of charge. Additional or replacement cards will be provided at a charge of $10.00 each.

4. The rights of each lessee in the entrances, corridors, elevators and escalators servicing the building are limited to ingress to and egress from such lessee's premises for the lessee and its employees, licensees and invitees, and no lessee shall use, or permit the use of, the entrances, corridors, escalators or elevators for any other purpose. No lessee shall invite to the lessee's premises, or permit the visit of, persons in such numbers or under such conditions as to interfere with the use and enjoyment of any of the entrances, corridors, escalators, elevators and other facilities of the building by any other lessees. Fire exits and stairways are for emergency use only, and they shall not be used for any other purpose by the lessees, their employees, licensees or invitees. No lessee shall encumber or obstruct, or permit the encumbrance or obstruction of, any of the sidewalks, entrances, corridors, escalators, elevators, fire exits or stairways of the building. Lessor reserves the right to control and operate the public portions of the building and the public facilities, as well as facilities furnished for the common use of the lessees, in such manner as it deems best for the benefit of the lessees generally.

5. Lessor may refuse admission to the building outside of business hours on business days to any person not known to the watchman in charge, or not having a pass issued by Lessor or the lessee whose premises are to be entered, or not otherwise properly identified, and Lessor may require all persons admitted to or leaving the building outside of business hours on business days to provide appropriate identification. Lessee shall be responsible for all persons for whom it issues any such pass and shall be liable to Lessor for all acts or omissions of such persons. Any person whose presence in the building at any time shall, in the judgment of Lessor, be prejudicial to the safety, character or reputation of the building or of its lessees may be denied access to the building or may be ejected therefrom. During any invasion, riot, public excitement or other commotion, Lessor may prevent all access to the building by closing the doors or otherwise for the safety of the lessees and protection of property in the building.

6. The cost of repairing any damage to the public portions of the building or the public facilities or to any facilities used in common with other lessees, caused by a lessee or its employees, licensees or invitees, shall be paid by such lessee.

7. No awnings or other projections shall be attached to the outside walls of the building. No curtains, blinds, shades or screens shall be attached to or hung in, or be used in connection with,

11

any window or door of the premises of any lessee, without the prior written consent of Lessor. Such curtains, blinds, shades or screens must be of a quality, type, design and color, and attached in the manner approved by Lessor.

8.      No lettering, sign, advertisement, notice or object shall be displayed in or on the windows or doors, or on the outside of any lessee's premises, or at any point inside any lessee's premises where the same might be visible outside of such premises, without the prior written consent of Lessor. In the event of the violation of the foregoing by any lessee, Lessor may remove the same without any liability, and may charge the expense incurred in such removal to the lessee violating this rule. Interior signs, elevator cab designations and lettering on doors and the building directory shall, if and when approved by Lessor, be inscribed, painted or affixed for each lessee by Lessor at the expense of such lessee, and shall be of a size, color and style acceptable to Lessor.

9.      The sashes, sash doors, skylights, windows and doors that reflect or admit light and air into the halls, passageways or other public places in the building shall not be covered or obstructed by any lessee, nor shall any bottles, parcels or other articles be placed on the window sills or on the peripheral air conditioning enclosures, if any.

10.     No showcases or other articles shall be put in front of or affixed to any part of the exterior of the building, nor placed in the halls, corridors or vestibules.

11.     Linoleum, tile or other floor covering shall be laid in a lessee's premises only in a manner first approved in writing by Lessor.

12.     No lessee shall mark, paint, drill into, or in any way deface any part of its premises or the building. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Lessor, and as Lessor may direct.

13.     No bicycles, vehicles, animals, fish or birds of any kind shall be brought into or kept in or about the premises of any lessee of the building.

14.     No noise, including, but not limited to, music or the playing of musical instruments, recordings, radio or television, which, in the judgment of Lessor, might disturb other lessees in the building, shall be made or permitted by any lessee. Nothing shall be done or permitted in the premises of any lessee which would impair or interfere with the use or enjoyment by any other lessee of any other space in the building.

15.     No lessee, nor any lessee's contractors, employees, agents, visitors or licensees, shall at any time bring into or keep upon the premises or the building any inflammable, combustible, explosive or otherwise dangerous fluid, chemical or substance.

16.     Additional locks or bolts of any kind which shall not be operable by the grand master key for the building shall not be placed upon any of the doors or windows by any lessee, nor shall any changes be made in locks or the mechanism thereof which shall make such locks inoperable by said grand master key. Additional keys for a lessee's premises and toilet rooms shall be

procured only from Lessor who may make a reasonable charge therefor. Each lessee shall, upon the termination of its tenancy, turn over to Lessor all keys of stores, offices and toilet rooms, either furnished to, or otherwise procured by, such lessee, and in the event of the loss of any keys furnished by Lessor such lessee shall pay to Lessor the cost thereof.

17. All removals, or the carrying in or out of any safes, freight, furniture, packages, boxes, crates or any other object or matter of any description must take place during such hours and in such elevators and in such manner as Lessor or its agent may determine from time to time. The persons employed to move safes and other heavy objects shall be reasonably acceptable to Lessor and, if so required by law, shall hold a master rigger's license. Arrangements will be made by Lessor with any lessee for moving large quantities of furniture and equipment into or out of the building. All labor and engineering costs incurred by Lessor in connection with any moving specified in this rule shall be paid by Lessee to Lessor, on demand.

18. Lessor reserves the right to inspect all objects and matter to be brought into the building and to exclude from the building all objects and matter which violate any of these Rules and Regulations or this Lease. Lessor may require any person leaving the building with any package or other object or matter to submit a pass, listing such package or object or matter, from the lessee from whose pro the package or object or matter is being removed, but the establishment and enlargement of such requirement shall not impose any responsibility on Lessor for the protection of any lessee against the removal of property from the premises of such lessee. Lessor shall in no way be liable to any lessee for damages or loss arising from the admission, exclusion or ejection of any person to or from the premises or the building under the provisions of this Rule or of Rule 5 hereof.

19. No lessee shall occupy or permit any portion of its premises to be occupied as an office for a public stenographer or public typist, or for the possession, storage, manufacture, or sale of liquor, narcotics, dope, tobacco in any form, or as a barber, beauty or manicure shop, or as a school. No lessee shall use its premises or any part thereof to be used, for manufacturing, or the sale at retail or auction of merchandise, goods or property of any kind.

20. Lessor shall have the right to prohibit any advertising or identifying sign by any lessee which, in Lessor's judgment, tends to impair the reputation of the Building or its desirability as a building for others, and upon written notice from Lessor, such lessee shall refrain from and discontinue such advertising or identifying sign.

21. Lessor shall have the right to prescribe the weight and position of safes and other objects of excessive weight, and no safe or other object whose weight exceeds the lawful load for the area upon which it would stand shall be brought into or kept upon any lessee's premises. If, in the judgment of Lessor, it is necessary to distribute the concentrated weight of any heavy object, the work involved in such distribution shall be done at the expense of the lessee and in such a manner as Lessor shall determine.

22. No machinery or mechanical equipment other than ordinary portable business machines may be installed or operated in any lessee's premises without Lessor's prior written consent, and in no case (even where the same are of a type so excepted or as so consented to by Lessor) shall

any machines or mechanical equipment be so placed or operated as to disturb other lessees; but machines and mechanical equipment which may be permitted to be installed and used in a lessee's premises shall be so equipped, installed and maintained by such lessee as to prevent any disturbing noise, vibration or electrical or other interference from being transmitted from such premises to any other area of the building.

23. Lessor, its contractors, and their respective employees, shall have the right to use, without charge therefor, all light, power and water in the premises of any lessee while cleaning or making repairs or alterations in the premises of such lessee.

24. No premises of any lessee shall be used for lodging or sleeping or for any immoral or illegal purpose.

25. The requirements of lessees will be attended to only upon application at the office of the building. Employees of Lessor shall not perform any work or do anything outside of their regular duties, unless under special instructions from Lessor.

26. Canvassing, soliciting and peddling in the building are prohibited and each lessee shall cooperate to prevent the same.

27. No lessee shall cause or permit any unusual or objectionable odors to emanate from its premises which would annoy other lessees or create a public or private nuisance. No cooking shall be done in the premises of any lessee except as is expressly permitted in such lessee's Lease.

28. Nothing shall be done or permitted in any lessee's premises, and nothing shall be brought into or kept in any lessee's premises, which would impair or interfere with any of tile building's services or the proper and economic heating, cleaning or other servicing of the building or the premises, or the use or enjoyment by any other lessee of any other premises nor shall there be installed by any lessee any ventilating, air-conditioning, electrical or other equipment of any kind which, in the judgment of Lessor, might cause any such impairment or interference.

29. No acids, vapors or other materials shall be discharged or permitted to be discharged into the waste lines, vents or flues of the building which may damage them. The water and wash closets and other plumbing fixtures in or serving any lessee's premises shall not be used for any purpose other than the purposes for which they were designed or constructed, and no sweepings, rubbish, rags, acids or other foreign substances shall be deposited therein. All damages resulting from any misuse of the fixtures shall be borne by the lessees who, or whose servants, employees, agents, visitors or licensees shall have, caused the same. Any cuspidors or containers or receptacles used as such in the premises of any lessee or for garbage or similar refuse, shall be emptied, cared for and cleaned by and at the expense of such lessee.

30. All entrance doors in each lessee's premises shall be left locked and all windows shall be left closed by the lessee when the lessee's premises are not in use. Entrance doors shall not be left open at any time. Each lessee, before closing and leaving its premises at any time, shall turn out all lights.

14

31. Hand trucks not equipped with rubber tires and side guards shall not be used within the building.

32. All windows in each lessee's premises shall be kept closed, and all blinds therein above the ground floor shall be lowered as reasonably required because of the position of the sun, during the operation of the building air-conditioning system to cool or ventilate the lessee's premises.

33. At no time shall any lessee employee park in any visitor parking space for any period of time. If any lessee vehicles are found in designated visitor spaces, they will be towed at the vehicle owner's expense.

34. Lessor reserves the right to rescind, alter or waive any rule or regulation at any time prescribed for the building when, in its judgment, it deems it necessary, desirable or proper for its best interest and for the best interests of the lessees, and no alteration or waiver of any rule or regulation in favor of one lessee shall operate as an alteration or waiver in favor of any other lessee. Lessor shall not be responsible to any lessee for the non-observance or violation by any other lessee of any of the rules and regulations at any time prescribed for the building.



COPY

State Auto - Milbank - South Dakota Lease - 3-5-14(CLEAN)